## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MELISSA WIGGINTON**                                          **CIVIL ACTION**

**VERSUS**                                                     **NO. 15-6694**

**SOCIAL SECURITY ADMINISTRATION**                            **SECTION: "G"(4)**

### ORDER AND REASONS

Before the Court are Plaintiff Melissa Wigginton's ("Plaintiff") objections[1] to the December 9, 2016 Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DBI") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying Plaintiff's application for benefits be affirmed.[4] Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons, the Court will sustain Plaintiff's objections and reject the Magistrate Judge's Report and Recommendation, and remand that the case to the ALJ for a new hearing.

---

[1] Rec. Doc. 15.

[2] Rec. Doc. 14.

[3] Rec. Doc. 1.

[4] Rec. Doc. 14 at 9.

# I. Background

### A.    *Procedural History*

In February 2013, Plaintiff filed an application for SSI and DBI, alleging disability due to petit mal seizures, fibromyalgia, edema of her feet or ankles, anxiety and depression and chronic low platelets.[5] After her claims were denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on October 23, 2013.[6] Plaintiff, her mother and a vocational expert participated in the hearing.[7]

On February 14, 2014, the ALJ issued a decision denying Plaintiff's application for benefits.[8] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[9] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful

---

[5] Adm. Rec. at 170–179, 198.

[6] *Id*. at 32–73.

[7] *Id*.

[8] *Id*. at 13–28.

[9] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

activity since May 9, 2012.[10] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "complex partial seizures/epilepsy, Attention Deficit Hyperactivity Disorder (ADHD), fibromyalgia, headaches, and anxiety."[11] At step three, the ALJ held that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[12]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work "with some additional constraints."[13] Specifically, the ALJ found that Plaintiff "can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can stand/walk for a total of 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; never climb ladders, ropes, scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; and avoid all exposure to hazards in the workplace."[14] The ALJ determined that Plaintiff was able to understand, remember and carry out simple instructions, and that Plaintiff could maintain attention for at least a two-hour time period and engage in appropriate social interactions.[15] At step

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[10] Adm. Rec. at 18.

[11] *Id.*

[12] *Id.* at 19.

[13] *Id.* at 20.

[14] *Id.*

[15] *Id.*

four, the ALJ also found that Plaintiff was unable to perform any past relevant work.[16] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.[17] Therefore, the ALJ determined that Plaintiff was not under a disability from May 9, 2012, through the date of the decision.[18]

Plaintiff requested review by the Appeals Council.[19] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on May 8, 2015.[20] On December 10, 2015, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act,[21] and this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On March 1, 2016, the Commissioner answered the complaint.[22]

On April 11, 2016, Plaintiff filed a brief arguing that the ALJ's decision erroneously rejected the findings of her treating physician without providing a valid reason for doing so.[23] On

---

[16] *Id.* at 25.

[17] *Id.* at 26.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 7–10.

[21] Rec. Doc. 1.

[22] Rec. Doc. 10.

[23] Rec. Doc. 12.

May 26, 2016, the Commissioner filed a reply brief arguing that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.[24]

**B.      *Report and Recommendation Findings***

The Magistrate Judge issued her Report and Recommendation on December 9, 2016.[25] The Magistrate noted that Plaintiff's primary argument was that the ALJ's decision offered no valid evidence or reason for rejecting the finding of Plaintiff's treating physician, Dr. Larcena, regarding the frequency and severity of Plaintiff's migraines.[26] The Magistrate stated that "[u]nder the regulations, a treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions."[27] The Magistrate noted that the ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."[28] However, the ALJ may discount the weight of a treating physician's opinion relative to other experts where the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques or is otherwise unsupported by the evidence.[29]

---

[24] Rec. Doc. 13.

[25] Rec. Doc. 14.

[26] *Id*. at 4.

[27] *Id*. (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R.§ 404.1527(a)(2)).

[28] *Id*. (quoting *Martinez*, 64 F.3d at 176).

[29] *Id.* at 5 (citing *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999)).

The Magistrate Judge reviewed the administrative record and concluded that the ALJ had conducted an exhaustive analysis of the medical records.[30] The Magistrate noted that the ALJ found that Plaintiff had sought medical treatment for her headaches at Tulane Medical Center on a sporadic basis.[31] The ALJ noted that on January 29, 2013, Plaintiff denied having headaches, and on October 15, 2014, Plaintiff did not complain of any pain.[32] The ALJ reported that Plaintiff's migraines were responding to Fioricet.[33] The ALJ found that Dr. Larcena's Medical Source Statement, which concluded that Plaintiff experienced headaches about twice a week requiring her to recline in a quiet dark room for two to three days, should not be given controlling weight because it was wholly inconsistent with the other medical evidence in the record.[34]

The Magistrate Judge addressed Plaintiff's argument that the ALJ incorrectly evaluated the October 15, 2013 medical records by concluding that Plaintiff's migraines were responsive to Fioricet.[35] The Magistrate reviewed the medical records, noting that the records actually mention that "migraines usually respond to Fioricet."[36] The Magistrate found Plaintiff's argument unavailing because, while the ALJ was not technically accurate in her assessment of Plaintiff's medical record, the ALJ's decision was still based upon substantial evidence.[37] Specifically, the

---

[30] *Id*. at 6.

[31] *Id*. (citing Adm. Rec. at 22).

[32] *Id*. (citing Adm. Rec. at 22–23).

[33] *Id*. (citing Adm. Rec. at 23).

[34] *Id*. (citing Adm. Rec. at 25).

[35] *Id*.

[36] *Id*. (citing Adm. Rec. at 368).

[37] *Id*.

Magistrate found the absence of a complaint of headaches during Plaintiff's October 2013 appointment to be of notable importance.[38] The Magistrate concluded that this record was consistent with the notion that Plaintiff's migraines were responding to treatment, regardless of whether that treatment was specifically Fioricet.[39] The Magistrate noted that Plaintiff's prescription drug history identified Topamax, but the Magistrate determined that Topamax is used to treat seizures and migraines, not only migraines as Plaintiff suggested.[40] The Magistrate found that the reference to Fioricet did not mean that Plaintiff was not responding adequately to treatment, particularly because Plaintiff had ceased complaining of headaches between the June 28, 2013 appointment and the October 2013 appointment.[41] Accordingly, the Magistrate found the ALJ's decision was based on substantial evidence, despite the inaccurate statement.[42]

Next, the Magistrate addressed Plaintiff's contention that the ALJ erred when she rejected the testimony of Plaintiff and her mother regarding Plaintiff's migraine headaches.[43] The Magistrate noted that the ALJ in evaluating the matter concluded that Plaintiff's mother's description of Plaintiff's condition was so extreme that it appeared implausible.[44] The Magistrate determined that the medical records supported the ALJ's conclusion that medications seemed to

---

[38] *Id*. at 6–7 (citing Adm. Rec. at 366).

[39] *Id*. at 7.

[40] *Id*. (citing Adm. Rec. at 368).

[41] *Id*. (citing Adm. Rec. at 285, 366).

[42] *Id*.

[43] *Id*.

[44] *Id*. (citing Adm. Rec. at 24).

lessen the frequency of Plaintiff's migraine headaches.[45]   The medical records indicated that Plaintiff sought treatment for headaches in January, March, and June of 2013 and for seizures in October 2013.[46] Accordingly, the Magistrate determined that the ALJ's decision which discounted the credibility of Plaintiff's mother's account and Plaintiff's account of the frequency of the migraine headaches was based on substantial evidence.[47]

 Finally, the Magistrate addressed Plaintiff's argument that the ALJ erred when she failed to give controlling weight to Plaintiff's treating physician, Dr. Larcena, who concluded that Plaintiff was having severe headaches at least twice per week.[48] The Magistrate noted that Dr. Larcena concluded that Plaintiff's headaches required her to recline in a quiet darkened room about twice per week for two to three days.[49] The ALJ declined to give this opinion, which was found on a Medical Source Statement, controlling weight because the opinion was wholly inconsistent with the other medical evidence of record including Dr. Larcena's own treatment records.[50] The Magistrate reviewed the medical records, noting that while the October 24, 2013 medical statement completed by Dr. Larcena indicated that Plaintiff's headaches were frequent, the October 15, 2013 medical report of Dr. Redmann indicated that Plaintiff had not complained of headaches.[51] Further,

---

[45] *Id*.

[46] *Id*. (citing Adm. Rec. at 245, 251, 285, 366).

[47] *Id*. at 8.

[48] *Id*.

[49] *Id*.

[50] *Id*. (citing Adm. Rec. at 26).

[51] *Id*. (citing Adm. Rec. at 366, 370).

the Magistrate noted that the medical evidence indicated that the last instance in which Plaintiff refilled a prescription for Fioricet, which could be used to treat headaches, was May 18, 2013, some five months before the medical statement was completed by Dr. Larcena.[52] Moreover, Plaintiff did receive prescriptions for Topamax after both her June and October 2013 visits with Dr. Redmann.[53] Accordingly, the Magistrate determined that these treatments appeared to have worked to control Plaintiff's headaches, and so the available objective medical evidence did not support the medical opinion of Dr. Larcena.[54] Therefore, the Magistrate concluded that the ALJ's decision in which she did not give controlling weight to Dr. Larcena's finding was based upon substantial evidence and should be affirmed.[55]

## II. Objections

### A.    *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on December 23, 2016.[56] She asserts that the ALJ's decision provided no specific or valid reason for rejecting Dr. Larcena's finding that Plaintiff experiences headaches of sufficient severity to require her to recline in a quiet, darkened room about twice per week for two to three days.[57] She contends that the ALJ's conclusion that Dr. Larcena's opinion was "wholly inconsistent with other medical

---

[52] *Id*. (citing Adm. Rec. at 360).

[53] *Id*. at 8–9 (citing Adm. Rec. at 287, 367).

[54] *Id*. at 9.

[55] *Id*.

[56] Rec. Doc. 15.

[57] Rec. Doc. 15-1 at 1 (citing Adm. Rec. at 370).

9

evidence of record including his own treatment records" was not specific because the ALJ did not cite any specific medical records in reaching this determination.[58]

Plaintiff asserts that the ALJ's decision made three references to her migraines: (1) "Dr. Larcena's records primarily record medications prescribed to the claimant and general complaints of . . . headaches, vomiting";[59] (2) "[f]or instance, records from Gregory Redmann, M.D./Tulane Medical Center dated January 29, 2013 show . . . [t]here was also no evidence of anxiety, depression, psychiatric treatment, fainting, headaches";[60] and (3) "[p]rogress notes dated October 15, 2013 from Tulane Medical Center show the claimant did not complain of any pain. Her migraines were responding to Fioricet."[61] Plaintiff argues that the ALJ's decision "demonstrates simple error in reading the [medical] notes."[62]

Plaintiff asserts that the January 29, 2013 medical notes contain two references to migraine headaches.[63] She contends that the October 15, 2013 medical notes have three references to past and present migraines.[64] Moreover, Plaintiff contends that she was not taking Fioricet at that time, but instead she was taking Topamax, which had to be increased by Dr. Redmann because her headaches were not responding adequately to treatment.[65] Plaintiff asserts that Dr. Redmann's

---

[58] *Id.* at 2.

[59] *Id.* (citing Adm. Rec. at 22).

[60] *Id.* (citing Adm. Rec. at 22).

[61] *Id.* (citing Adm. Rec. at 23).

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

medical record states, "Will try to help prevent any breakthrough seizures, and treat her migraines by increasing Topamax to 100 mg b.i.d., Migraines usually respond to Fioricet."[66] Accordingly, Plaintiff contends that the ALJ's decision offers no valid evidence nor valid reason for rejecting the findings of Dr. Larcena regarding the frequency and severity of Plaintiff's migraines.[67]

Plaintiff notes that her mother had to leave her home in Colorado in order to care for her in Louisiana.[68] Plaintiff contends that her father is financially supporting her and her children.[69] Plaintiff asserts that "[t]he combination of plaintiff's inability to obtain treatment records from Dr. Sedrish and the illegibility of Dr. Larcena's treatment records preclude compelling arguments to this Court regarding other bases for her disability claim."[70] However, she argues that there is ample recorded treatment for, and diagnoses of, migraine headaches.[71] She notes that on October 24, 2013, Dr. Larcena confirmed that she was experiencing severe headaches at least twice per week causing her to recline in a quiet, darkened room for two to three days.[72] She asserts that Dr. Larcena found that her headaches have been more frequent since May 2012, the proposed onset date.[73]

Plaintiff contends that the ALJ's decision offers no specific or valid reason for rejecting the findings of Dr. Larcena, and "any conceivable alternative cannot now be urged by the

---

[66] *Id.* (citing Adm. Rec. at 366–68).

[67] *Id.*

[68] *Id.* at 3.

[69] *Id.*

[70] *Id.* at 4.

[71] *Id.*

[72] *Id.* at 4–5.

[73] *Id.* at 5.

Magistrate."[74] Plaintiff relies on *Loza v. Apfel*, where the Fifth Circuit found that "[n]o good cause appear[ed] in the ALJ opinion or in the record to justify the ALJ's failure to give 'considerable weight' to the treating doctor's medical evidence."[75] Moreover, Plaintiff notes that at the administrative hearing the vocational expert testified that severe headaches requiring Plaintiff to cease activity at least twice per week "would eliminate jobs."[76] Accordingly, "lacking any valid reason for rejecting the findings of Dr. Larcena and the testimony of Plaintiff and her mother," Plaintiff asserts that she has made a prima facie showing of disability.[77]

Plaintiff asserts that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such actions solely by the grounds invoked by the agency."[78] She argues that the Magistrate's Report and Recommendation attempts to substitute the Magistrate's judgment by offering arguments that the ALJ could have made, but did not.[79] Plaintiff notes that she received treatment for headaches by Dr. Larcena on December 6, 2011, April 4, 2012, April 26, 2012, May 7, 2012, and January 24, 2013.[80] Moreover, Plaintiff asserts that her statement in January 2013 that she was not experiencing a headache referenced her pain that day, and she did list "migraine headaches under

---

[74] *Id.* (citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000)).

[75] *Id.* (quoting *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000)).

[76] *Id.* at 6 (citing Adm. Rec. at 72).

[77] *Id.*

[78] *Id.* (quoting *SEC v. Chenery*, 332 U.S. 194 (1947)).

[79] *Id.*

[80] *Id.* at 6–7.

her past medical history."[81] Plaintiff notes that Dr. Larcena confirmed that she was suffering from headaches twice a week, not every day.[82]

Plaintiff notes that the Magistrate found the absence of a complaint of headaches during Plaintiff's October 2013 appointment to be "of notable importance."[83] However, Plaintiff argues that the October 2013 record states that she had "a history of seizures, ADHD, migraine, since her last visit," and under the review of systems is an entry that states "Headaches: yes."[84] Therefore, Plaintiff asserts that "the Magistrate's Report and Recommendation not only offers prohibited substitution of reasoning, it offers incorrect substitution of reasoning as being 'of notable importance.'"[85]

Plaintiff asserts that "[i]t is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly. When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence."[86] Because the ALJ failed to do so here, Plaintiff asserts that this matter should be reversed and she should be found to be disabled, or, alternatively, the matter should be remanded with instructions that there be a new evidentiary hearing.[87]

---

[81] *Id.* at 7 (citing Adm. Rec. at 245).

[82] *Id.*

[83] *Id.*

[84] *Id.* at 8 (citing Adm. Rec. at 366–67).

[85] *Id.*

[86] *Id.* at 10 (quoting *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)).

[87] *Id.* at 10–11.

**B.      The Commissioner's Response**

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on December 23, 2016.

### III. Standard of Review

**A.      Review of the Magistrate Judge's Report and Recommendation**

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[88] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[89] A district court's review is limited to plain error of parts of the report which are not properly objected to.[90]

**B.      Standard of Review of Commissioner's Final Decision on DIB and SSI Benefits**

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[91] Appellate review of the Commissioner's denial of DIB and SSI benefits[92] is limited to determining whether the decision is supported by substantial

---

[88] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[89] *Id.*

[90] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[91] 42 U.S.C. § 405(g).

[92] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for supplemental security income ("SSI"). *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

evidence in the record and whether the proper legal standards were used in evaluating the evidence.[93] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[94] The Court must review the whole record to determine if such evidence exists.[95] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[96] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[97] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[98]

## IV. Law and Analysis

### A.    *Law Applicable to Qualification for DIB and SSI*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[93] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[94] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[95] *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).

[96] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[97] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[98] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[99] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[100] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[101] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[102]

In the instant case, the ALJ found that Plaintiff's "complex partial seizures/epilepsy, Attention Deficit Hyperactivity Disorder (ADHD), fibromyalgia, headaches, and anxiety" were severe conditions within the meaning of the Act.[103] The ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments under the regulations.[104] The ALJ found that Plaintiff had the RFC to perform light work "with some additional constraints."[105] Specifically, the ALJ found that Plaintiff "can occasionally lift/carry 20

---

[99] 42 U.S.C. § 423(d)(1)(A).

[100] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[101] *Id*. §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[102] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[103] Adm. Rec. at 18.

[104] *Id*. at 19.

[105] *Id*. at 20.

pounds and frequently lift/carry 10 pounds; can stand/walk for a total of 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; never climb ladders, ropes, scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; and avoid all exposure to hazards in the workplace."[106] The ALJ determined that Plaintiff was able to understand, remember and carry out simple instructions, and that Plaintiff could maintain attention for at least a two-hour time period and engage in appropriate social interactions.[107] The ALJ concluded that Plaintiff could not perform her past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff could perform.[108] Accordingly, the ALJ concluded that Plaintiff was not disabled from May 9, 2012, through the date of the decision.[109] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[110]

**B.      *The ALJ's Rejection of the Findings of Plaintiff's Treating Physician***

As noted above, the ALJ found that Plaintiff had severe headaches, among other conditions.[111] In evaluating Plaintiff's RFC, the ALJ reviewed Plaintiff's medical records.[112] The ALJ declined to give controlling weight to Dr. Larcena's opinion that Plaintiff experiences headaches of sufficient severity to require her to recline in a quiet, darkened room about twice per

---

[106] *Id.*

[107] *Id.*

[108] *Id.* at 25.

[109] *Id.* at 26.

[110] *See  Perez*, 415 F.3d at 461

[111] Adm. Rec. at 18.

[112] *Id.* at 20–25.

week for two to three days because "his opinion is wholly inconsistent with the other medical evidence of record including his own treatment records."[113] The Magistrate concluded that the ALJ's decision in which she did not give controlling weight to Dr. Larcena's finding was based upon substantial evidence and should be affirmed.[114] Plaintiff objects to this determination, arguing that the ALJ's decision provided no specific or valid reason for rejecting Dr. Larcena's finding.[115] She contends that the ALJ's conclusion that Dr. Larcena's opinion was "wholly inconsistent with other medical evidence of record including his own treatment records" was not specific because the ALJ did not cite any specific medical records in reaching this determination.[116] Plaintiff argues that the ALJ's decision "demonstrates simple error in reading the [medical] notes."[117] Accordingly, the Court reviews this issue *de novo*.

Under the Social Security Act,

[t]he Commissioner of Social Security is directed to make any findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security, which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.[118]

---

[113] *Id.* at 25.

[114] Rec. Doc. 14 at 9.

[115] Rec. Doc. 15-1 at 1.

[116] *Id.* at 2.

[117] *Id.*

[118] 42 U.S.C. § 405(b)(1).

Therefore, under "the explicit terms of the statute, the ALJ is required to discuss the evidence offered in support of [the plaintiff's] claim for disability and to explain why she found [the plaintiff] not to be disabled at that step."[119] However, the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[120]

While this Court may not "reweigh the evidence or substitute its judgment for that of the administrative fact finder,"[121] the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence.[122] In *Brunson v. Astrue*, "the ALJ misstated the record when he stated that it contained no evidence of any ongoing psychiatric treatment and no evidence that Mr. Brunson was ever prescribed medication during the period in question."[123] The Fifth Circuit held that the error was harmless because "the record indicate[d] that Mr. Brunson took anti-depressant medication which controlled his symptoms of depression during the relevant time period," and "impairments that reasonably can be remedied or controlled by medication or treatment are not disabling."[124] Accordingly, the Fifth Circuit found that "it would not be appropriate . . . to remand the case for the purpose of having the ALJ correct this misstatement."[125]

---

[119] *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

[120] *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

[121] *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

[122] *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010).

[123] *Id.*

[124] *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).

[125] *Id.*

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight.[126] "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"[127] "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[128]

In *Loza v. Apfel*, the Fifth Circuit noted that "[m]edical evidence must support a physician's diagnosis, but if it does the expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder unless contradicted by substantial evidence to the contrary.'"[129] Further, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[130] 20 C.F.R. § 404.1527(c) provides a list of factors that the ALJ should consider in determining whether to give a treating physician controlling weight, including: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the "relevant evidence" the medical source presented to support the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that "tend to support or contradict the opinion."

---

[126] *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).

[127] *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

[128] *Id.*; *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (internal citations omitted).

[129] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (internal citations and quotation marks omitted).

[130] *Id.* (internal citations omitted).

Plaintiff argues that the ALJ erred in rejecting the Medical Source Statement completed by Dr. Larcena on October 24, 2013, which provided in part that at least twice per month Plaintiff experienced headaches of sufficient severity to require her to recline in a quiet, dark room for two to three days.[131] The Medical Source Statement also stated that Plaintiff's headaches had become more frequent since May 2012, and that she was experiencing severe headaches at least twice per week.[132] Plaintiff asserts that the ALJ did not provide a valid reason for this determination.

The ALJ's decision made the following references to Plaintiff's medical treatment for her migraine headaches. First, the ALJ's decision noted that the medical notes provided by Dr. Larcena were for the most part illegible.[133] However, the ALJ concluded that the treatment provided by Dr. Larcena "was routine and conservative in nature," and the ALJ found no evidence from Dr. Larcena's records that Plaintiff's complaints reached "a disabling level or required aggressive management."[134] The ALJ also reviewed a medical record completed by Dr. Gregory Redmann at the Tulane Medical Center on January 29, 2013.[135] The ALJ noted that the January 29, 2013 record showed "no evidence of . . . headaches."[136] Finally, the ALJ reviewed a progress note dated October 15, 2013, from the Tulane Medical Center, and the ALJ concluded that the record reflected

---

[131] Adm. Rec. at 370.

[132] *Id.*

[133] Adm. Rec. at 22.

[134] *Id.*

[135] *Id.*

[136] *Id.*

that Plaintiff's "migraines were responding to Fiorcet."[137] The ALJ determined that Plaintiff's "migraines were improving with medications."[138] Therefore, the ALJ concluded that Dr. Larcena's Medical Source Statement should not be accorded controlling weight because it was "wholly inconsistent with the other medical evidence of record including his own treatment records."[139]

Plaintiff argues that the ALJ's opinion "demonstrates simple error in reading the [medical] notes."[140] She contends that the ALJ's opinion incorrectly stated that the January 29, 2013 medical record of Dr. Gregory Redmann showed no evidence of headaches.[141] Plaintiff points out that the January 29, 2013 medical notes contained two references to migraine headaches: (1) migraine headaches are listed under Plaintiff's past medical history; and (2) the assessment states that Dr. Redmann would "try to prevent any breakthrough [seizures], and treat [Plaintiff's] migraines by increasing topamax slightly by 25 mg PM dose."[142]

Plaintiff also contends that the ALJ misstated the medical records by stating that the "[p]rogress notes dated October 15, 2013 from Tulane Medical Center show the claimant did not complain of any pain. Her migraines were responding to Fioricet."[143] Plaintiff points out that the October 15, 2013 medical notes have three references to past and present migraines.[144] The

---

[137] *Id*. at 23.

[138] *Id*. at 24.

[139] *Id*. at 25.

[140] Rec. Doc. 15-1 at 2.

[141] *Id*. (citing Adm. Rec. at 22).

[142] Adm. Rec. at 245.

[143] Rec. Doc. 15-1 at 2 (citing Adm. Rec. at 23).

[144] *Id*.

October 15, 2013 record identified migraine headaches as a condition under Plaintiff's past medical history.[145] The record lists migraines as a condition under the "assessment" section of the form.[146] Finally, the record states, "Will try to help prevent any breakthrough [seizures], and treat her migraines by increasing topamax to 100 mg bid. Migraines usually respond to fiorcet [sic]."[147]

The ALJ found that Dr. Larcena's Medical Source Statement regarding the severity of Plaintiff's headaches was inconsistent with the other medical evidence of record including Dr. Larcena's own treatment records. Contrary to the ALJ's assertion that Plaintiff did not complain of headaches during her medical appointments in January and October of 2013, the progress notes from both of those appointments show that Dr. Redmann increased Plaintiff's dosage of Topamax to "treat her migraines."[148] The increased dosage of Topamax to treat Plaintiff's migraines appears to be consistent with Dr. Larcena's opinion that Plaintiff's headaches had increased in severity since May 2012. Moreover, in rejecting the opinion of Dr. Larcena, the ALJ did not address the fact that Dr. Larcena had been treating Plaintiff since at least September 7, 2011, over two years before completing the Medical Source Statement. Further, the ALJ's decision did not consider any of the other factors set forth at 20 C.F.R. § 404.1527(c) for determining whether to give a treating physician's opinion controlling weight.

---

[145] Adm. Rec. at 366.

[146] *Id.* at 367.

[147] *Id.* at 368.

[148] *Id.* at 245, 368. The Magistrate found the absence of a complaint of headaches during Plaintiff's October 2013 appointment to be "of notable importance." However, this statement is an inaccurate recitation of the October 2013 record. The "review of symptoms" section of the report states "Headache: yes." *Id.* at 367. Moreover, as noted above, the record states that the dosage of Topamax would be increased to treat Plaintiff's migraines. *Id.* at 368.

While it is not permitted to reweigh the evidence, the Court finds that the ALJ's misstatements of the evidence substantially affected Plaintiff's rights. Accordingly, the Court will sustain Plaintiff's objection, and will remand to the ALJ pursuant to 42 U.S.C. § 405(g) for a new hearing and more adequate consideration of the record.

## V. Conclusion

For the foregoing reasons, the Court concludes that the ALJ's misstatements of the evidence substantially affected Plaintiff's rights. Accordingly,

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections, and **REJECTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ pursuant to 42 U.S.C. § 405(g) for a new hearing consistent with this Court's Order and Reasons.

**NEW ORLEANS, LOUISIANA,** this  6th  day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**